# Supreme Court of Louisiana

The Opinions handed down on the **26th day of June, 2019**, are as follows:

**PER CURIAM**:

**2018-B-1646        IN RE: PATRICK A. GIRAUD**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Patrick A. Giraud, Louisiana Bar Roll number 29877, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that all but six months of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of two years. The probationary period shall be governed by the conditions set forth in this opinion and shall commence when respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with these conditions, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

WEIMER, J., concurs in part and dissents in part and assigns reasons.
CLARK, J., dissents in part and concurs in part for the reasons assigned by Justice Crichton.
HUGHES, J., concurs with reasons.
CRICHTON, J., dissents in part, concurs in part and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2018-B-1646

IN RE: PATRICK A. GIRAUD

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Patrick A. Giraud, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS**

On February 3, 2016, the ODC received an overdraft notice regarding a November 23, 2015 overdraft in respondent's client trust account. The overdraft resulted from respondent's attempt to pay a third-party medical provider for services rendered to a client who had no funds in the trust account.

Thereafter, the ODC's forensic auditor conducted an audit of respondent's trust account for the period of August 1, 2015 through January 31, 2016. The audit revealed that respondent regularly paid non-client expenses and made cash withdrawals from his trust account; these non-client expenses and cash withdrawals totaled $33,219.33 during the audit period. The audit also revealed that, on January 31, 2016, the trust account balance to satisfy pending client expenditures should have been at least $16,345.62. Instead, the balance on that date was $3,235.61, resulting in a deficit of $13,110.01.

On March 17, 2016, respondent informed the ODC that he was addicted to OxyContin, explaining that "the cost of the medication coupled with its effects on me overwhelmed my finances and I eventually began to take money from my Trust

account." He also informed the ODC that he had contacted the Judges and Lawyers Assistance Program ("JLAP") and was preparing to enter inpatient treatment. He further informed the ODC that "I have also gone through my files and paid all outstanding debts that had been previously withheld from client settlements." This last statement was confirmed by the ODC's audit of respondent's trust account. Finally, during his October 26, 2016 sworn statement to the ODC, respondent admitted that he regularly used his trust account as a second operating account in 2015.

On July 7, 2016, respondent completed a ninety-day inpatient treatment program at Palmetto Addiction Recovery Center. Palmetto's medical director diagnosed respondent with severe opioid use disorder, among other diagnoses. On July 12, 2016, respondent signed a five-year JLAP recovery agreement.

## DISCIPLINARY PROCEEDINGS

In September 2017, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 1.15(f) (on client trust accounts, cash withdrawals and checks made payable to "Cash" are prohibited), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). In his answer, respondent admitted to violating Rules 1.15(a) and 1.15(f) but denied violating Rule 8.4(c). The matter then proceeded to a formal hearing on the merits.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee found that respondent used OxyContin daily from 2013 through early 2016. Respondent admitted that he did not have a prescription for the drug but

2

would purchase it from others, including another attorney. He also admitted that he used his client trust account as an operating account. After being discharged from Palmetto, respondent voluntarily agreed to be randomly drug tested and has had 24 such drug tests. He also regularly attends Alcoholics Anonymous meetings and testified that he has not used drugs or alcohol since leaving Palmetto. Finally, respondent admitted that he violated Rules 1.15(a) and 1.15(f) of the Rules of Professional Conduct.

Regarding the testimony of Buddy Stockwell, JLAP's executive director, the committee found that he described respondent as "so open" and someone who "badly wanted help." Mr. Stockwell also indicated that all of the random drug tests respondent has taken have been negative. Finally, Mr. Stockwell testified that he does not have any concerns about respondent relapsing.

Regarding the testimony of Angelina Marcellino, the ODC's forensic auditor, the committee found that she concluded respondent had misused and converted funds in his trust account, the total being approximately $13,000 but could have been as high as $33,000. Ms. Marcellino also reviewed records indicating respondent had recently made restitution to clients and former clients.

The committee found credible the testimony of respondent and the other witnesses. The committee also found that the evidence shows respondent improperly took funds from his trust account to support a drug habit. Following treatment, respondent has shown no signs of continued violation of the Rules of Professional Conduct. Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.

Regarding mitigating factors, the committee noted that the ODC had stipulated to the following: absence of a prior disciplinary record, timely good faith effort to make restitution or to rectify the consequences of the misconduct, and full

3

and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings.

In light of the above findings, the committee recommended respondent be suspended from the practice of law for one year and one day, fully deferred, subject to the following conditions:

1. Respondent shall continue to be bound by the terms of his JLAP recovery agreement for at least two years;

2. Respondent shall obtain regular audits of his trust account, to be performed by a CPA approved by the ODC;

3. Respondent shall submit the findings of the audits on a quarterly basis to the ODC for two years;

4. Respondent shall take at least six hours of continuing legal education in the area of law office practice/client trust account management; and

5. Respondent shall successfully complete the Louisiana State Bar Association's Trust Accounting School within one year.

The ODC objected to the leniency of the committee's recommended sanction, arguing that the period of deferment is not supported by the record.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings do not appear to be manifestly erroneous and are supported by the record. The board adopted the committee's factual findings and additionally found that respondent ran for traffic court judge in 2011 and 2013 and lost both elections. Respondent testified that, after his 2013 loss, he felt he had failed in reaching a goal he had worked toward for many years, and "the bottom dropped out." Respondent's friend gave him OxyContin and told him it would make him feel better and make him able to function. However, within a couple of weeks, respondent realized he

4

was addicted to the drug. The day before respondent wrote the trust account check that resulted in the overdraft in the account, his friend died of a heroin overdose. Respondent admitted that his addiction and the effects of the addiction overwhelmed his finances, and he eventually began taking money from his trust account. The board further found that the evidence shows respondent always promptly paid his clients the amount they were owed from settlement funds. The evidence also shows that, otherwise, respondent mishandled his trust account in 2015. Respondent testified that his mishandling of the account began in July or August 2015. This mishandling included paying client costs from the trust account when the client's funds were not in the account, failing to disburse from the trust account attorney's fees owed to himself, depositing flat fees into the trust account, delaying payments to third parties after settlement funds were received, and paying personal expenses from the trust account. Respondent also testified that he used funds from the trust account to buy OxyContin. Respondent hired an accountant, who has reviewed the trust account to ensure it is in compliance and who has educated respondent regarding reconciliation of his bank accounts.

Based on these facts, the board agreed with the committee that respondent violated the Rules of Professional Conduct as charged. The board then determined that respondent violated duties owed to his clients, the public, and the legal profession. At times, respondent acted negligently, knowingly, and intentionally in mishandling his trust account. The board also determined that respondent never intended to steal from anyone and his misconduct resulted in no actual harm to his clients or the public; however, his conduct created the potential for harm to his clients and third parties. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is suspension.

The board recognized the sole aggravating factor of multiple offenses. In mitigation, the board found the following: the absence of a prior disciplinary record,

5

personal or emotional problems, timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, chemical dependency, and remorse. Regarding respondent's chemical dependency as a mitigating factor, the board concluded that, although respondent did not call a medical provider to testify before the committee about whether his chemical dependency caused his misconduct, a reasonable review of the evidence supports a finding of causation in this matter.

After also considering this court's prior jurisprudence addressing similar misconduct, the board recommended respondent be suspended from the practice of law for one year and one day, fully deferred, subject to two years of probation with the following conditions:

1. Respondent shall enter into a new JLAP agreement for five years, or as otherwise recommended by JLAP, and shall remain in compliance with its terms, with periodic reports to the ODC;

2. During the two-year period of probation, respondent shall be required to obtain, at his cost and expense, quarterly audits of his trust account by a CPA approved by the ODC, with the audit reports promptly submitted to the ODC;

3. Within one year of the court's imposition of discipline, respondent shall take at least six hours of continuing legal education in the area of law office practice/client trust account management; and

4. Within one year of the court's imposition of discipline, respondent shall complete Trust Accounting School.

Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation. However, on our own motion, we ordered that the matter be set on the docket for briefing and oral argument.

6

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So.2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So.2d 150.

The record of this matter supports a finding that respondent mishandled his client trust account, resulting in conversion of client funds, and used funds from his trust account to support his addiction to OxyContin. This misconduct amounts to a violation of the Rules of Professional Conduct as charged.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent violated duties owed to his clients, the public, and the legal profession. His misconduct was knowing, if not intentional, but caused no actual harm to any clients or third parties. The baseline sanction for this type of misconduct is suspension.

7

The record supports the aggravating and mitigating factors found by the disciplinary board. Additionally, the aggravating factor of substantial experience in the practice of law (admitted 2005) is present.

Specifically regarding the mitigating factor of chemical dependency, we agree with the board that the evidence supports a finding that respondent is affected by a chemical dependency and that the chemical dependency caused the misconduct. The evidence also reflects that respondent has sought treatment and has demonstrated a meaningful period of recovery; he completed a ninety-day inpatient treatment program at Palmetto Addiction Recovery Center in July 2016 and has been sober for more than two years. Furthermore, respondent has been subject to a JLAP agreement since July 2016, and JLAP's executive director reports that all of the random drug tests respondent has taken have been negative and that he does not have any concerns about respondent relapsing. By all accounts, respondent's recovery has made a recurrence of his misconduct unlikely.

Nevertheless, this mitigating factor does not justify the fully deferred suspension recommended by the board. Respondent possessed and used controlled substances, and funded his habit by converting client funds from his trust account. Under these circumstances, we find an actual period of suspension is warranted.

Based on this reasoning, we will suspend respondent from the practice of law for one year and one day, with all but six months deferred, subject to two years of probation with the conditions set forth in the board's report, as follows:

1. Respondent shall enter into a new JLAP agreement for five years, or as otherwise recommended by JLAP, and shall remain in compliance with its terms, with periodic reports to the ODC;

2. During the two-year period of probation, respondent shall be required to obtain, at his cost and expense, quarterly audits of his trust account by a

CPA approved by the ODC, with the audit reports promptly submitted to the ODC;

3. Within one year of the court's imposition of discipline, respondent shall take at least six hours of continuing legal education in the area of law office practice/client trust account management; and

4. Within one year of the court's imposition of discipline, respondent shall complete Trust Accounting School.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Patrick A. Giraud, Louisiana Bar Roll number 29877, be and he hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that all but six months of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for a period of two years. The probationary period shall be governed by the conditions set forth in this opinion and shall commence when respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with these conditions, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

# SUPREME COURT OF LOUISIANA

## NO. 18-B-1646

## IN RE: PATRICK A. GIRAUD

*ATTORNEY DISCIPLINARY PROCEEDINGS*

**WEIMER, J.**, concurring in part and dissenting in part.

I agree with the majority that discipline is warranted. I respectfully dissent regarding the sanction, believing a shorter period of actual suspension would fully advance the goals of the attorney disciplinary system.

"Disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct." **Louisiana State Bar Ass'n v. Reis**, 513 So.2d 1173, 1177-78 (La.1987). In terms of meeting these goals in the instant case, the following actions by the respondent are significant.

The respondent self-reported that he had a substance abuse problem with opoid pain medication. Although the respondent had earlier come under scrutiny by the Office of Disciplinary Counsel (ODC) for overdrawing his client trust account, from all that appears in the record, the respondent's opioid abuse might not have come to light at that time but for his self-reporting.

Concurrent with his self-reporting, the respondent paid all debts attributable to his misuse of his client trust account and informed the ODC that he planned to enter an inpatient rehabilitation facility. The respondent made good on his plan and completed the rehabilitation program. After completing the rehabilitation program, the respondent entered into a recovery agreement with drug monitoring. In the three

years since completing the rehabilitation program, there have been no reported incidents calling his recovery from opioid abuse into question. There were no ethical lapses before the respondent's addiction, nor have there been any ethical lapses since his recovery three years ago.[1]

The respondent's actions fit within several of the goals this court identified in **Reis**. The respondent's self-reporting and rehabilitation have served to protect the public. Paying the debts the respondent incurred demonstrated the respondent's commitment to preserving the integrity of the legal profession. As found by the hearing committee and the disciplinary board, no client was directly harmed.

Deterring future conduct, in my view, is one goal that merits special consideration here. Naturally, the respondent's rehabilitation serves to deter future misconduct by the respondent himself. Deterring misconduct by other attorneys is also important. Ideally, no attorney would abuse opioid pain medication. However, when this ideal is not attained, self-reporting must be encouraged in order for the attorney to obtain professional help, make reparations, and deter future misconduct.

Here, the majority's sanction, with six months of actual suspension, is significantly greater than that recently imposed in a comparable addiction case; the majority's sanction, therefore, could unintentionally discourage self-reporting by other attorneys. *Cf.* **In re Miciotto**, 2016-1757 (La. 11/18/16), 206 So.3d 860. In **Miciotto**, an attorney knowingly and intentionally converted almost $13,000 in client funds to support his gambling addiction. *Id.*, 2016-1757, pp. 1-2, 206 So.3d at 861-62. The converted funds were quickly replaced and the attorney sought treatment for his gambling addiction. *Id.*, 2016-1757 at 2, 206 So.3d at 862. The respondent self-

---

[1] As noted by the majority, testimony at the hearing indicated that, because of his sustained recovery, the likelihood of relapse is low.

2

reported his misconduct to the ODC. *Id.* This court imposed a fully deferred suspension. Similarly, in this matter both the hearing committee and the disciplinary board recommended a fully deferred sanction and the ODC initially did not object.

Opioid addiction has become a difficult public health issue impacting people in all walks of life. The problem is so prevalent, it has been referred to as the "opioid epidemic." See ELINORE F. MCCANCE-KATZ MD, PHD, SUBSTANCE ABUSE & MENTAL HEALTH SVCS. ADMIN., THE NATIONAL SURVEY ON DRUG USE AND HEALTH: 2017, p. 4. Using these drugs for temporary pain relief or as a temporary emotional crutch has far too often led to addictions difficult to overcome. See *id.* (describing a "[d]isproportionate increase in drug overdose deaths associated with opioids ... .").

Just as society is faced with increasing difficulties from this epidemic, attorney discipline matters such as this are increasingly challenging. Here, the respondent made a mistake in his personal life, turning to substance abuse when faced with an emotional challenge, which in turn involved the attorney disciplinary system when he misused his trust account. However, he recognized he had a problem, took action to rectify that problem, and restored all funds before any client was harmed. He also expressed sincere remorse, evidenced by his compliance with his drug monitoring and recovery plan. I believe a shorter actual suspension would serve our system of discipline, given the facts of this case.

Under the totality of circumstances, I would impose a suspension of one year and one day, deferring all but thirty days. The reason the respondent should serve a period of actual suspension is that, unlike the addiction to gambling in **Miciotto**, which is a lawful activity, the respondent's addiction here began with abusing opioids not prescribed to him at a time he faced emotional challenges.

**SUPREME COURT OF LOUISIANA**

**NO. 2019-B-1646**

**IN RE: PATRICK A. GIRAUD**

**ATTORNEY DISCIPINARY PROCEEDING**

**CLARK, J., dissents in part for the reasons assigned by Justice Crichton.**

06/26/19

**SUPREME COURT OF LOUISIANA**

**No. 2018-B-1646**

**IN RE:  PATRICK A. GIRAUD**

**ATTORNEY DISCIPLINARY PROCEEDING**

**Hughes, J., concurring.**

I reluctantly concur with the disposition of this matter.  I would have preferred that the suspension be totally deferred as recommended by the Hearing Committee and the Disciplinary Board.  Given the other conditions imposed on the respondent by the court it is unfair to deprive him of his livelihood and at the same time require him to pay for those conditions.  I concur only to resolve this matter at the court in the belief that it is in respondent's interest to put this matter behind him, and I am hopeful that he can do successfully and resume the practice of law uninterrupted in the future.

# SUPREME COURT OF LOUISIANA

# NO. 2018-B-1646

# IN RE: PATRICK A. GIRAUD

# ATTORNEY DISCIPLINARY PROCEEDING

**CRICHTON, J., dissents in part and concurs in part and assigns reasons:**

I agree with the per curiam's finding that respondent has violated the Rules of Professional Conduct as charged, and that respondent's misconduct warrants a period of actual suspension. However, despite the significant mitigation evidence as noted by the majority (chemical dependence and recovery, compliance with his JLAP agreement, and restitution to his clients), in my view, the seriousness of respondent's misconduct is worthy of a lengthier suspension. Specifically, respondent converted money in his client trust account and on multiple occasions committed a felony crime, Possession of a Controlled Dangerous Substance, Schedule II of the Uniform Dangerous Substances Law, La. R.S. 40:964.[1]

In determining the appropriate sanction in this matter, although slightly factually dissimilar, I find *In re: Abdalla*, 17-0453 (La. 10/18/17), 236 So. 3d 1223, instructive. Both respondents struggle with addiction, and utilized either a client trust account or false client billing in order to satisfy that addiction. While respondent in this instance did not engage in fraudulent behavior as the respondent did in *Abdalla*, in that case, the majority voted to disbar respondent. However, as noted in my dissent in *Abdalla*, I would have imposed a three-year suspension for somewhat similar conduct as to respondent's herein. Again, even acknowledging

---

[1] Respondent initially received the illegal drugs from a friend, who later died of a heroin overdose.

1

factual distinctions between the two cases, I find the imposition of a six month suspension in this case too lenient, where the Court imposed disbarment in *Abdalla* for conduct not substantially dissimilar. In my view, an actual suspension of one year and one day in this case is warranted, at the conclusion of which respondent may petition the court for readmission with evidence of his continuing rehabilitative work with JLAP, as well as his ongoing success in his addiction recovery.